IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

ROMAN PRAVAK, M.D.,

      Plaintiff,

v.                                                     Case No. 07-9999

THE MEYER EYE GROUP, PLC,
DAVID MEYER, M.D., AND
ANA FLORES, M.D.

                                                  JURY TRIAL DEMANDED

      Defendants.

## COMPLAINT

### PARTIES AND JURISDICTION AND VENUE

1.      Plaintiff Roman Pravak, M.D. ("Dr. Pravak") is currently a citizen and resident of Florida.

2.      Defendant The Meyer Eye Group, PLC (the "PLC") is a Tennessee professional limited liability company headquartered in Memphis, Tennessee. The PLC's registered agent is Linda Smith at 7205 Wolf River Blvd., Suite 100, Germantown, Tennessee 38138.

3.      Defendant David Meyer, M.D. ("Dr. Meyer") is a Tennessee citizen who resides in or near Memphis.

4.      Defendant Ana Flores, M.D. ("Dr. Flores") is a Tennessee citizen who resides in or near Memphis.

5.      This Court has subject matter jurisdiction because of diversity of citizenship and more than $75,000 is in controversy. 28 U.S.C. §1332. Venue in this District is proper under 28 U.S.C. §1391.

6.      Alternatively, this Court has subject matter jurisdiction because federal law is in issue. 28 U.S.C. §1331.


**BACKGROUND FACTS REGARDING DR. PRAVAK'S MEMBERSHIP STATUS**

7.      Dr. Meyer was a founder of Vitreoretinal Foundation, PLLC, a Tennessee professional limited liability company ("VRF") that provides professional ophthalmology services. Prior to June, 2005, Dr. Meyer, an ophthalmologist, was a member of VRF.

8.      Prior to June, 2005, Drs. Flores and Pravak, both ophthalmologists, were employees of VRF.

9.      On or about June, 2005, Dr. Meyer ceased being a member of VRF.

10.     Dr. Meyer felt bitter toward VRF. Dr. Meyer decided to start a new ophthalmology practice and so he tried to recruit professionals to join him.

11.     Dr. Meyer wanted Drs. Flores and Pravak to join him, so he offered them equal membership in a new professional limited liability company.

12.     Dr. Meyer also offered the following extra benefits to Dr. Pravak: deed to a free condo at Spring Creek Ranch (an upscale golf course and condominium community in East Shelby County), free club membership at Spring Creek Ranch, an automobile, health insurance, and all the patients Dr. Pravak would need to

stay busy and further learn his profession.

13.     Drs. Flores and Pravak accepted Dr. Meyer's offer. Their agreement is documented in a one-page "binding Letter of Intent" dated June 2, 2005, attached hereto as <u>Exhibit 1</u> (the "Letter Agreement").  The Letter Agreement refers to a new entity that had already been formed, known as The Eye Group-Memphis, PLC ("The Eye Group"). The Letter Agreement provided that all three physicians would be equal members in terms of participation, management and compensation, that in addition, Dr. Pravak would be entitled to a draw, that the Letter Agreement was binding, and that more definitive documents would be prepared for future execution incorporating these principles.

14.     At a minimum, the more definitive documents were expected to include an operating agreement.

15.     No operating agreement was ever prepared.

16.     According to the Secretary of State of Tennessee, The Eye Group was formed on 9/7/04, and was administratively dissolved on 8/19/05.

17.     According to the Secretary of State of Tennessee, The Meyer Eye Group, PLC (one of the Defendants in this case) – the PLC – was formed on 6/15/05, just 13 days after the Letter of Intent was executed.

18.     Dr. Pravak was never informed that a new entity had been formed. Rather, he was told that The Eye Group was changing its name to refer expressly to "Meyer" to benefit from any goodwill associated with Dr. Meyer's professional reputation. Dr. Pravak agreed that such a name change was desirable.

3

19.   Dr. Pravak was never told that changing the name or even forming a new entity would cause the Letter Agreement to no longer define his relationship or status.

20.   The Articles of Organization for the PLC (the "Articles"), attached hereto as Exhibit 2, were signed by Dr. Meyer on 6/13/05 and filed by the Tennessee Secretary of State on 6/15/05. Section 5 of the Articles states that there were three (3) members of the PLC at the time of filing.

21.   The PLC entered into a Professional Lease Agreement with Methodist Healthcare – Memphis Hospitals dated 8/10/05. Each of Drs. Meyer, Flores, and Pravak signed this lease on behalf of the PLC, each identified as a member of the PLC. The signature page of this lease is attached hereto as Exhibit 3.

22.   On 8/11/05, Drs. Meyer, Flores, and Pravak each signed a Unanimous Written Member Consent, with each identified as a member of the PLC, attached hereto as Exhibit 4.

23.   On 8/11/05, the PLC borrowed $1,200,000 from First Tennessee Bank. Drs. Meyer, Flores, and Pravak each personally jointly and severally guaranteed this bank loan. The signature page of this loan agreement and guaranty is attached hereto as Exhibit 5.

24.   On 12/6/05, Drs. Meyer and Flores signed and sent a letter to BankTennessee (the 12/6/05 Letter"), attached hereto as Exhibit 6, indicating (i) that the PLC currently has two (2) members, (ii) that the PLC does not have an operating agreement, and (iii) that the absence of an operating agreement means that the PLC is governed by the Tennessee LLC Act.

25.  Neither Dr. Meyer nor Dr. Flores ever informed Dr. Pravak of the 12/6/05 Letter.

26.  Through 11/17/05, Dr. Pravak was receiving compensation from the PLC that was being identified by the PLC in its checkbook as a "draw."  Beginning on 12/14/05, the PLC stopped referring to these payments in the checkbook as draws.

27.  On 2/7/06, the PLC's outside accountant, Tracy DeBacco, emailed her associate, Martha Pearson, with the instruction to "Go through the entire year on Meyer and recode all checks to Roman Pravak to contract labor. He will NOT be a partner. Also, please send Ann Marie an updated list of what we need for 1099s. We need to push this." This email is attached hereto as Exhibit 7.

28.  On 2/6/06, Dr. Meyer sent an email to Matt Hughes, O.D., an optometrist and potential referral source. In this email, Dr. Meyer refers to the PLC as having only two partners – Drs. Meyer and Flores.  Dr. Meyer also indicated to Dr. Hughes that the PLC would like to pay Dr. Hughes a "signing bonus." Dr. Meyer stressed the confidentiality of this proposal by explaining that he had discussed the "signing bonus" only with Dr. Flores. This email is attached hereto as Exhibit 8.

29.  On 3/6/06, Dr. Pravak gave written notice to Drs. Meyer and Flores of a special meeting of members to be held on 3/17/06, attached hereto as Exhibit 9. That notice identified 11 serious problems for the members to address.

30.  On 3/6/06, Drs. Meyer, Flores, and Pravak met informally at Dr. Meyer's request. This was not an official member meeting, but Dr. Meyer reviewed the notice in detail. Dr. Meyer explained to Dr. Pravak, among other things, that there were no members of the PLC because an operating agreement had never been executed.

5

Dr. Flores did not object to this statement.

31.     On 3/17/06, there was a formal meeting of members. This was attended by Drs. Meyer, Flores, and Pravak, and by Jerry Mitchell, attorney for Drs. Meyer and Flores, and Matthew Cavitch, attorney for Dr. Pravak. Attached hereto as Exhibit 10 are minutes of this meeting as drafted by Dr. Pravak's counsel.  These minutes were shared with Dr. Meyer's counsel who never questioned the accuracy of the minutes. At the 3/17/06 member meeting, Dr. Meyer acknowledged that Dr. Pravak had never withdrawn as a member from the PLC and that he had never been expelled from the PLC.

32.     For 2005 and 2006, the PLC sent Dr. Pravak a Form 1099, not Form K-1.


**BACKGROUND FACTS REGARDING UNLAWFUL MEDICAL PROCEDURES**

33.     Dr. Meyer has permitted his ophthalmic technicians to give injections into the eye.

34.     Ophthalmic technicians are not licensed to give injections into the eye.

35.     Every time an ophthalmic technician gives an injection into the eye, the PLC runs the risk of not having malpractice insurance coverage for that procedure, and of not being legally entitled to bill for the procedure.

36.     This issue arose at the 3/17/06 member meeting and both Drs. Meyer and Flores dismissed it as a non-issue.


**BACKGROUND FACTS REGARDING CREDENTIALING**

37. Dr. Flores applied for a Florida medical license on 7/8/05.

38. The Florida license application requires that the applicant have at least six hours of Continuing Medical Education ("CME") regarding HIV (3 hours), domestic violence (1 hour) and prevention of medical errors (2 hours). Dr. Flores did not have the required CME at the time of her application, so she requested a six-month extension in her letter.

39. Dr. Flores did not satisfy the Florida CME requirement during the six-month extension period and never informed the Florida licensing board.

40. To this date, Dr. Flores has not satisfied the Florida licensing requirements.

41. When Dr. Flores applied to renew her Arkansas medical license for 2005, she signed a representation that she had taken the required 20 hours of CME. She also indicated that she was signing under the penalties of perjury and that she would inform the Arkansas Board of any changes in information.

42. Contrary to Dr. Flores' representation in her Arkansas renewal application for 2005, Dr. Flores did not have the required CME.

43. On 12/21/04, Dr. Flores wrote to the Arkansas Board admitting that she did not have the CME time and that she needed a 120-day extension to take the CME in early 2005.

44. Dr. Flores did not obtain her CME credits during the 120-day extension period. Nor did Dr. Flores ever inform the Arkansas Board that she failed to take the CME.

45. When Dr. Flores applied to renew her Arkansas medical license for 2006, she

signed the same representation that she had taken the required 20 hours of CME.

46.    Contrary to Dr. Flores' representation in her Arkansas renewal application for

2006, Dr. Flores did not have the required CME.


**BACKGROUND FACTS REGARDING INSURANCE FRAUD**

47.    On 1/17/06, Dr. Flores gave an exam to a male patient (whose initials are RP) and

concluded that he had 20/100 vision.

48.    On 2/20/06, Dr. Flores represented in a letter to a long-term disability insurance

company that RP was legally blind in one eye, and that his vision was "Count

Fingers."

49.    "Count Fingers" is much worse than 20/100.  Legally blind is much worse than

20/100.


**BACKGROUND FACTS REGARDING TAMPERING WITH MEDICAL RECORDS**

50.    In early July, 2005, Dr. Meyer wrote in the medical records of a female patient

(whose initials are BS) that her "cornea clear, macula excellent." In late July,

2005, Dr. Meyer re-wrote BS's medical records to indicate problems.

51.    In December, 2005, Dr. Meyer rewrote the medical records of a male patient

(whose initials are CD) to indicate a worse condition than Dr. Meyer had initially

recorded.

52.    Dr. Meyer rewrote the medical records of a male patient (whose initials are RS) to

indicate a worse condition than Dr. Meyer had initially recorded. Dr. Meyer

8

added language to the effect that he had warned RS about the risks of surgery. Dr. Meyer once gave RS anesthesia under the pretenses of calming him down, when in fact Dr. Meyer proceeded to do a billable procedure.

53.     Regarding the same patient, RS, when Dr. Flores visited the Corinth, Mississippi office of the eye doctor who referred RS to Dr. Meyer, after RS had sued the PLC and/or Dr. Meyer, Dr. Flores asked two accompanying associates (Angel Phillips and James McElhaney) to surreptitiously copy RS's patient files (without his consent) and bring them back to the PLC. Angel reluctantly complied with Dr. Flores' request.

54.     Linda Smith, the PLC office manager, once intentionally deleted a computer file relating to a female patient (whose initials are MC) who had requested a copy of her records. Dr. Meyer's secretary, Ann Marie Charnes, prepared a cover letter to MC dated 9/30/05 to be signed by Dr. Meyer, sending the records, but the letter was never sent. Instead, Dr. Meyer drafted a new letter dated 1/23/06 to MC explaining in detail that he could not access her file because of the move from VRF. Linda Smith tried to delete Ms. Charnes' cover letter from the computer on 1/24/06.


**BACKGROUND FACTS REGARDING REGULATORY NON-COMPLIANCE**

55.     The PLC has or had satellite clinics that include some or all of the following locations: Kosciusko, MS, Corinth, MS, Oxford, MS, Greenville, MS, Columbus, MS, Texarkana, AR, and Fort Myers, FL.

9

56.    The PLC does not/did not have a written contract with each satellite clinic.

57.    Dr. Meyer caused the PLC to enter into these arrangements without calling a member meeting to approve them.

58.    A health care attorney did not review and recommend each arrangement.

59.    On 12/13/05, the PLC paid Dr. Lee Ford, the eye doctor at the Texarkana clinic, $20,000 for no stated purpose.

60.    As indicated in ¶28 above, Dr. Meyer wished to offer Dr. Hughes a confidential "signing bonus."


**BACKGROUND FACTS REGARDING FRAUDULENT PATIENT LETTERS**

61.    Dr. Flores and/or Dr. Meyer intercepted many letters written by Dr. Pravak to his patients or to their local eye doctors, without telling Dr. Pravak.

62.    This secret interference delayed the sending of patient letters.

63.    Dr. Meyer and/or Dr. Flores often changed Dr. Pravak's letters to provide for quicker return visits, increasing the PLC's volume of business in a way not deemed necessary for patient welfare by Dr. Pravak, the physician who examined the patient.

64.    Dr. Meyer and/or Dr. Flores sometimes changed Dr. Pravak's patient letter in a way that would misinform the patient or his doctor, overstating the urgency of additional care.

65.    Dr. Meyer and/or Dr. Flores revised the letters intending to increase surgeries and exams in order to increase PLC revenues, to the detriment of patients.

**COUNT ONE:**       **Breach of Letter Agreement by depriving Dr. Pravak of his equal one-third membership interest**

66.     Plaintiff incorporates by reference the averments of paragraphs 1 through 65 of this Complaint as though the same were set forth fully herein.

67.     The Letter Agreement is an enforceable contract.

67.     The PLC has successor liability for the obligations of The Eye Group.

68.     The Letter Agreement entitles Dr. Pravak to equal voting power, equal participation, and equal compensation in the PLC.

69.     The Defendants have deprived Dr. Pravak of equal voting power, equal participation, and equal compensation in the PLC, in breach of the Letter Agreement.

**COUNT TWO:**       **Breach of Letter Agreement by breaching covenant to operate PLC in a lawful manner**

70.     Plaintiff incorporates by reference the averments of paragraphs 1 through 69 of this Complaint as though the same were set forth fully herein.

71.     The Letter Agreement included an implied covenant of good faith and fair dealing that all parties would try to operate the PLC in a lawful manner.

72.     The Defendants breached this implied covenant by repeatedly and intentionally engaging in fraud and other wrongdoing, forcing Dr. Pravak to be a member of a PLC mired in corruption and exposed to enormous and unnecessary legal and business risks.

**COUNT THREE:     Breach of Contract to Provide Ancillary Benefits**

73.     Plaintiff incorporates by reference the averments of paragraphs 1 through 72 of this Complaint as though the same were set forth fully herein.

74.     To induce Dr. Pravak to enter into the Letter Agreement, Dr. Meyer promised Dr. Pravak that he would receive certain other benefits: a deed to a free condominium at Spring Creek Ranch; free club membership at Spring Creek Ranch; an automobile, health insurance, and a steady flow of patients sufficient to keep Dr. Pravak busy.

75.     Dr. Pravak relied on these promises when he decided to leave his former employment at VRF and join Dr. Meyer.

76.     Dr. Meyer has never delivered any of the benefits he promised.

77.     These promises constitute an enforceable contract between Dr. Meyer and Dr. Pravak.

78.     Dr. Meyer is in breach.


**COUNT FOUR:     Breach of Promise to Provide Ancillary Benefits**

79.     Plaintiff incorporates by reference the averments of paragraphs 1 through 78 of this Complaint as though the same were set forth fully herein.

80.     Even if the promises described in Paragraph 74 above do not constitute a contract, these promises constitute an enforceable promise by Dr. Meyer reasonably and detrimentally relied upon by Dr. Pravak.

81.     Dr. Meyer is in breach of his enforceable promise.

**COUNT FIVE:        Unlawful Expulsion**

82.     Plaintiff incorporates by reference the averments of paragraphs 1 through 81 of

this Complaint as though the same were set forth fully herein.

83.     The PLC's Articles do not permit expulsion of a member.

84.     The Defendants have ceased treating Dr. Pravak as a member, effectively

expelling him as a member, in violation of Tennessee law.


**COUNT SIX:        Tort of Unlawful Conversion**

85.     Plaintiff incorporates by reference the averments of paragraphs 1 through 84 of

this Complaint as though the same were set forth fully herein.

86.     Dr. Pravak owns a full one-third membership interest in the PLC.

87.     By unlawfully expelling Dr. Pravak, Drs. Meyer and Flores unlawfully and

intentionally appropriated Dr. Pravak's property, increasing their aggregate

membership interest in the PLC from 66.66% to 100 percent.


**COUNT SEVEN:      Tort of Inducing Breach of Contract**

88.     Plaintiff incorporates by reference the averments of paragraphs 1 through 87 of

this Complaint as though the same were set forth fully herein.

89.     Drs. Meyer and Flores caused the PLC to cease treating Dr. Pravak as a member

of the PLC, in violation of the Letter Agreement and in violation of Dr. Pravak's

contract and property rights under Tennessee law as a member of a limited

liability company.

90.     In so doing, Drs. Meyer and Flores were not acting in any fiduciary capacity to the PLC. They were acting solely on their own behalf, to aggrandize their own membership interests, and not in any good faith effort to promote the best interest of the PLC.

91.     Drs. Meyer and Flores knew of the Letter Agreement and Dr. Pravak's rights under Tennessee law; they intended to induce breach by the PLC; they acted maliciously; they caused the PLC to breach the contract; and Dr. Pravak has suffered damages as a result.

92.     Drs. Meyer and Flores violated TCA §47-50-109 and are liable for treble damages.


**COUNT EIGHT:      Breach of Duty of Good Faith and Fair Dealing by trying to deprive Dr. Pravak of his equal one-third membership interest**

93.     Plaintiff incorporates by reference the averments of paragraphs 1 through 92 of this Complaint as though the same were set forth fully herein.

94.     All parties to the Letter Agreement had a duty of good faith and fair dealing with respect to each other party.

95.     The Defendants breached their duty of good faith and fair dealing in their treatment of Dr. Pravak.


**COUNT NINE:      Breach of Fiduciary Duty to Minority Owner**

96.     Plaintiff incorporates by reference the averments of paragraphs 1 through 95 of this Complaint as though the same were set forth fully herein.

14

97.     Drs. Meyer and Flores own two-thirds of the membership interests in the PLC, giving them voting control over the PLC.

98.     As a controlling group of members, they owe a fiduciary duty of the utmost good faith and loyalty to the minority member, Dr. Pravak.

99.     The Defendants breached their fiduciary duty of good faith and loyalty in their treatment of Dr. Pravak, by lying to him, deceiving him, and stealing from him.


**COUNT TEN:        First Violation of Civil RICO**

100.    Plaintiff incorporates by reference the averments of paragraphs 1 through 99 of this Complaint as though the same were set forth fully herein.

101.    One or more of the Defendants committed mail and/or wire fraud in each of the following instances:

   a.      The 12/6/05 Letter to BankTennessee fraudulently represented that the PLC had only two members. (See ¶24 above)

   b.      Tracy DeBacco, CPA, was instructed to claim falsely that Dr. Pravak was not a member. (See ¶27 above)

   c.      Dr. Meyer's 2/6/06 email to Dr. Matt Hughes fraudulently represented that the PLC had only two members. (See ¶28 above)

   d.      The PLC mailed Dr. Pravak Form 1099s, not K-1s, fraudulently characterizing Dr. Pravak as a non-member. (See ¶32 above)

   e.      Each time the PLC files a tax return showing only two members, the PLC is committing mail or wire fraud.

f.     Each time the PLC files an annual report with the Tennessee Secretary of State showing only two members, the PLC is committing mail or wire fraud.

g.     Each time a procedure is unlawfully performed by an ophthalmic technician, the bill for such services by the PLC constitutes mail or wire fraud. (See ¶¶33-35 above)

h.     When Dr. Flores first applied by mail to renew her Arkansas medical license for 2005, she fraudulently represented that she had taken the required CME and that she would inform the Arkansas board of any changes in information. (See ¶41 above)

i.     When Dr. Flores corrected her application and requested an extension to get her CME, she fraudulently represented that she would inform the Arkansas board of any changes in information. (See ¶43 above)

j.     When Dr. Flores applied by mail to renew her Arkansas medical license for 2006, she fraudulently represented that she had taken the required 20 hours of CME. (See ¶45 above)

k.     On 2/20/06, Dr. Flores fraudulently represented in a letter to a long-term disability insurance company that a patient was legally blind in one eye, and that his vision was "Count Fingers." (See ¶48 above)

l.     Each time the Defendants mailed or faxed out patient records that had been re-written, the Defendants committed mail or wire fraud. (See ¶¶50-54 above)

16

m.    Dr. Meyer wrote a letter to a patient who requested her records fraudulently indicating that he had lost her records. (See ¶54 above)

n.    Dr. Meyers and/or Dr. Flores rewrote patient letters initially written by Dr. Pravak, fraudulently overstating the need for their medical services and fraudulently appearing to be the opinion of Dr. Pravak. Each such letter that was mailed constitutes mail fraud. (See ¶¶61-65 above)

102.    The acts described in ¶101 are "racketeering acts" under civil RICO.

103.    The racketeering acts are all designed to benefit one or more of the Defendants.

104.    Many of the racketeering acts are designed to effectively expel Dr. Pravak from the PLC.

105.    Many of the racketeering acts are annual or periodic acts that will continue indefinitely.

106.    There is a pattern of racketeering activity.

107.    The Defendants' taking of Dr. Pravak's membership interest in the PLC violates 18 U.S.C. §1962(b).

108.    Dr. Pravak has been injured by this taking. He has been deprived of his one-third interest in the profits and distributions of the PLC. He has been deprived of at least one year of his income as an experienced retinal surgeon. He has been deprived of his opportunity to become a 50% member of an established PLC upon the death or retirement of Dr. Meyer.

109.    Dr. Pravak is entitled to treble damages and legal fees and costs under 18 U.S.C. §1964(c).

**COUNT ELEVEN:   Second Violation of Civil RICO**

110.    Plaintiff incorporates by reference the averments of paragraphs 1 through 109 of this Complaint as though the same were set forth fully herein.

111.    Dr. Pravak is entitled to be a member of a PLC that is operated lawfully.

112.    Drs. Meyer and Flores have conducted the PLC's activities through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(c).

113.    The Defendants' corruption has forced Dr. Pravak to take an indefinite leave of absence and start over elsewhere. This delay in his career has cost him at least one year of income as an experienced retinal surgeon. It has also diminished the value of the PLC or could diminish the value of the PLC because of the enormous contingent liabilities that are being created. Any such diminution in value would be the proximate result of the racketeering acts committed by the Defendants.

114.    Dr. Pravak is entitled to treble damages and legal fees and costs under 18 U.S.C. §1964(c).

**COUNT TWELVE:  Declaratory Judgment regarding Dr. Pravak's continuing status and entitlements as a member of the PLC**

115.    Plaintiff incorporates by reference the averments of paragraphs 1 through 114 of this Complaint as though the same were set forth fully herein.

116.    Dr. Pravak requests a declaratory judgment as follows:

        a.      Dr. Pravak was a member of the PLC at its inception.

        b..      Dr. Pravak never withdrew from the PLC.

18

c.      The PLC never lawfully expelled Dr. Pravak.

d.      Dr. Pravak is still a member of the PLC.

e.      The PLC does not have an operating agreement.

f.      Under the Tennessee Limited Liability Act (which governs the PLC), Dr. Pravak is entitled to one-third of the profits and distributions and voting power.

g.      Under the Letter Agreement, Dr. Pravak is entitled to one-third of the profits and distributions and voting power.

h.      Under the Tennessee Limited Liability Act (which governs the PLC), Dr. Pravak is entitled to notice of all member meetings and to copies of financial statements and tax returns and to all of the other information the other members are receiving.

i.      Under the Letter Agreement, Dr. Pravak is entitled to whatever notice and PLC information is received by Drs. Meyer and Flores.


**COUNT THIRTEEN:**          **Declaratory Judgment that Dr. Pravak is entitled to be a member of a PLC that is operated lawfully, and injunctive relief compelling the Defendants to correct their unlawful conduct.**

117.    Plaintiff incorporates by reference the averments of paragraphs 1 through 116 of this Complaint as though the same were set forth fully herein.

118.    Dr. Pravak requests a declaratory judgment and injunctive relief as follows:

a.      Dr. Pravak is entitled to a PLC that is operated lawfully.

b.      The Defendants shall be ordered to correct the unlawful conduct by

19

admitting the wrongful conduct to each affected party and doing whatever

is necessary to rectify the wrongful behavior.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants for actual damages, treble damages where appropriate, punitive damages where appropriate, legal fees and costs, declaratory judgment, and injunctive relief, and for such further relief as the Court deems just and equitable, including the following:

Compensatory damages under Counts 1-11;

Punitive damages or treble damages and legal fees and costs under Counts 2, and 6-11;

Declaratory relief under Counts 12-13; and

Injunctive relief under Count 13.

## JURY DEMAND

Plaintiff demands a Trial by Jury on all issues.


Respectfully submitted,

THE CAVITCH LAW FIRM

By: /s/ Matthew P. Cavitch
        Matthew P. Cavitch, Esq.
        11150 Glen Birnham
        Memphis, Tennessee  38028
        (901) 850-8780 - telephone
        (901) 850-8781 - facsimile
        Attorney for the Plaintiff


## Certificate of Service

I, Matthew P. Cavitch, do hereby certify that on June 22, 2007, I electronically filed Plaintiff's **Complaint** with the Clerk of the Court using CM/ECF system.


/s/ Matthew P. Cavitch
Matthew P. Cavitch