# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION AT MEMPHIS

| | | |
|---|---|---|
| ROMAN PRAVAK, M.D., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-2433-JPM-dkv |
| | ) | |
| THE MEYER EYE GROUP, PLC, | ) | |
| DAVID MEYER, M.D., and | ) | |
| ANA FLORES, M.D., | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND;
## ORDER DISMISSING COUNTS VII AND IX;
## ORDER DENYING MOTIONS TO STRIKE AND TO DISMISS COUNTS I,
## II, VIII, X, XI, AND XIII

Pending before the Court are Defendants' Motions to Dismiss Counts I, II, VIII, X, and XI (Docs. 20, 23, 25, filed Oct. 29, 2007), Motions to Dismiss Count VII (Docs. 27, 28, filed Oct. 29, 2007), and Motions to Dismiss Counts IX and XIII and to Strike (Docs. 55, 59, 60, filed Jan. 4, 2008). Plaintiff responded in opposition to each of these motions and filed a Motion for Leave to Amend the Complaint (Doc. 61, filed Dec. 4, 2007) to address some of the concerns raised by Defendants' Motions to Dismiss. The Court held hearings in these matters on November 15, 2007, and on January 18, 2008. For the reasons discussed below, the Court GRANTS Defendants' Motions to Dismiss Counts VII

and IX; DENIES Defendants' Motions to Strike and to Dismiss Counts I, II, VIII, X, XI, and XIII; and GRANTS Plaintiff's Motion for Leave to File an Amended Complaint.

## I. Background

Plaintiff's allegations arise from the parties' ophthalmology practices. Drs. Pravak, Meyer, and Flores were all ophthalmologists at the Vitreoretinal Foundation, PLLC until the summer of 2005. (Am. Compl. ¶¶ 7-9.[1]) Dr. Meyer sought Drs. Pravak and Flores's participation in a new ophthalmology practice and offered Dr. Pravak a condominium, golf club membership, automobile, health insurance, and clientele as incentives to join. (Am. Compl. ¶¶ 11, 12.) On June 2, 2005, Dr. Pravak agreed to join Dr. Meyer's new practice and executed a "Letter of Intent" to become a "full and equal" member in Dr. Meyer's newly-formed entity The Eye Group-Memphis, PLC ("the Eye Group"). (Am. Compl. ¶ 13; Doc. 1-3.) The Letter of Intent provided that "[a]ppropriate documents will be prepared providing for [Dr. Pravak's] participation, management and compensation." (Am. Compl. ¶ 13; Doc. 1-3.) The Letter of Intent was "to be a binding agreement of the general terms

---

[1] As discussed _infra_ Section II.B., the Court grants Plaintiff's Motion for Leave to Amend, and relies on the allegations as stated in the Amended Complaint.

and conditions . . . subject to execution of mutually
acceptable, definitive written agreements." (Doc. 1-3.)

On June 15, 2005, Defendant The Meyer Eye Group, PLC
("the Meyer Group") was formally established with
Tennessee's Secretary of State. (Am. Compl. ¶ 17.)
Plaintiff was not aware of the Meyer Group's formation as a
separate entity, believing that the Eye Group had merely
changed its name to capitalize on Dr. Meyer's professional
reputation. (Id. ¶ 18.) Throughout the summer of 2005,
Drs. Meyer, Flores, and Pravak all participated in the
business of the Meyer Group. All three were signatories to
the Meyer Group's lease agreement, a membership consent
form, and a $1.2 million bank loan. (Id. ¶¶ 21-23; Docs.
1-4, -5, -6.) On August 19, 2005, the Eye Group was
administratively dissolved. (Am. Compl. ¶ 16.) The Meyer
Group paid Dr. Pravak a "draw" throughout the summer and
until November 17, 2005. (Id. ¶ 26.)

In December of 2005, Drs. Meyer and Flores began
characterizing themselves as the Meyer Group's only
partners. In correspondence with BankTennessee and a
referral source, Drs. Meyer and Flores indicated that the
Meyer Group had only two partners. (Id. ¶¶ 24, 28; Docs.
1-7 & -9.) The Meyer Group ceased to characterize Dr.
Pravak's compensation as a "draw." (Am. Compl. ¶ 26.) In

February of 2006, the Meyer Group's accountant indicated
she wished to "recode all checks to Roman Pravak to
contract labor.  He will NOT be a partner. . . .  We need
to push this."  (Id. ¶ 27; Doc. 1-8.)  On March 6, 2006, in
a meeting with Drs. Pravak and Flores, Dr. Meyer asserted
that without an operating agreement the Meyer Group did not
have formal members.  (Am. Compl. ¶ 30.)  On March 17,
2006, in a meeting among Drs. Meyer, Flores, Pravak and
their respective legal counsel, Dr. Pravak agreed to "take
some time off" from the Meyer Group. (Id. ¶ 31.)

In addition to these allegations, Plaintiff also
asserts that while at the Meyer Group Drs. Flores and Meyer
permitted technicians to perform unlawful medical
procedures, failed to satisfy their licensing requirements,
over-billed patients, improperly re-wrote and maintained
medical records, failed to comply with relevant
regulations, and misinformed patients.  (Am. Compl. ¶¶ 33-
65.)  Plaintiff filed the instant suit on June 22, 2007,
alleging breach of contract (Counts I-IV, VIII); tortious
inducement of breach of contract (Count VII); expulsion
(Count V); conversion (Count VI); breach of fiduciary duty
(Count IX); violations of the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b)-(c)
(Counts X, XI); and seeking declaratory judgments and

injunctive relief (Counts XII, XIII).  The Amended

Complaint includes additional allegations of fraud (Counts

XIV, XVI, XVII, XIX), misrepresentation (Counts XV, XVIII),

intentional interference with a business relationship

(Count XX), and derivative claims on behalf of the Eye

Group against Drs. Meyer and Flores (Counts XXI, XXII).

## II. Leave to Amend

### A. Standard of Review

Under the Federal Rules of Civil Procedure, "the Court

should freely give leave when justice so requires."  Fed.

R. Civ. P. § 15(a)(2).  Leave to amend should be granted

"[i]f the underlying facts or circumstances relied upon by

a plaintiff may be a proper subject of relief" in order to

give the plaintiff "an opportunity to test his claim on the

merits."  Forman v. Davis, 371 U.S. 178, 182 (1962).

Factors to consider in deciding whether to grant leave to

amend include prejudice to the opposing party, delay, and

futility of amendments.  See Miller v. Admin. Office of

Courts, 448 F.3d 887, 898 (6th Cir. 2006)(citing Perkins v.

Am. Elec. Power Fuel Supply, Inc., 246 F.3d 593, 605 (6th

Cir. 2001)).  "In the absence of any apparent or declared

reason – such as . . . bad faith or dilatory motive on the

part of the movant [or] repeated failure to cure

deficiencies by amendments previously allowed . . . the

leave sought should, as the rule requires, be 'freely given.'" <u>Forman</u>, 371 U.S. at 182. "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." <u>Miller v. Calhoun County</u>, 408 F.3d 803, 817 (6th Cir. 2005)(<u>citing</u> <u>Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.</u>, 632 F.2d 21, 23 (6th Cir. 1980)).

**B. Analysis**

Plaintiff seeks to amend the original complaint to include additional factual allegations and new theories of relief. Defendants argue that the Amended Complaint's factual allegations are futile attempts to preserve the challenged RICO claims and that the entire Motion for Leave to Amend should be denied because it was filed after Defendants' Motions to Dismiss and without a certificate of consultation. (Defs.' Resp. (Doc. 66) 1.) Though Defendants' objections are not without merit, the Court GRANTS Plaintiff's Motion for Leave to Amend for the following reasons.

First, with respect to Plaintiff's failure to consult, the Court's Local Rules require that a motion for leave to amend "shall be accompanied by a certificate of counsel." W.D. Tenn. Civ. R. 7.2(a)(1)(B). Plaintiff did not include such a certificate and, therefore, violated Local Rule 7.2.

The Court declines to deny Plaintiff's motion on these
grounds.  Pursuant to Local Rule 7.2 Plaintiffs should seek
consultation on all future matters as required.

Second, Plaintiff's decision to request leave to amend
after Defendants had prepared their initial motions to
dismiss is not so prejudicial as to warrant denial on those
grounds.  As Defendants argue in their Response to the
Motion for Leave to Amend and as the Court will discuss
infra Section III.E., the additional factual allegations
are futile to preserve Plaintiff's RICO claims against
dismissal, and the Court can rule on the pending Motions to
Dismiss without further briefing on the additional factual
allegations.  Therefore, the addition of these new
allegations is not prejudicial to Defendants despite their
inclusion subsequent to the preparation of the Motions to
Dismiss.  The addition of new causes of action is also not
prejudicial because Defendants are free to file a second
Motion to Dismiss to address these additional theories of
relief.  See, e.g., Rowley v. McMillan, 502 F.2d 1326, 1333
(4th Cir. 1974)(citing 5C Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1388 (3d ed.
2004)).

Finally, Defendants argue that the requested
amendments are futile attempts to save Plaintiff's RICO

claims from dismissal and should, therefore, be denied.  As discussed _infra_ Section III.E., the factual allegations are a sufficient basis on which to state claims under RICO. These new allegations may also be material to the additional theories of relief included in the Amended Complaint.  Finding that the additional facts and claims asserted in the amended complaint are neither futile nor prejudicial, the Court GRANTS Plaintiff's Motion for Leave to File an Amended Complaint.

**III. Sufficiency of Stated Claims**

    **A. Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992), and must construe all of the allegations in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73

(1984). "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671-72 (6th Cir. 2006) (citing NHL Players Ass'n v. Plymouth Whalers Hockey Club, 419 F.3d 462, 468 (6th Cir. 2005) (citation omitted)).

### B. Counts I, II, & VIII

Defendants move to dismiss the claims arising from the alleged breach of the June 2, 2005, Letter of Intent, arguing that the letter was subject to a condition precedent that never occurred and is, therefore, not enforceable. (Defs.' Mem. (Doc. 20-2) 4.) Plaintiff disputes that the letter was subject to a condition precedent, instead characterizing the phrase "subject to execution of mutually acceptable, written agreements" as meaning that the letter would be binding among the parties until it was superseded by a formal operating agreement. (Pl.'s Resp. (Doc. 30) 3.)

First, the Court must determine whether or not the Letter of Intent constituted an enforceable contract. Under Tennessee law, a letter of intent may be treated as a

binding contract in certain circumstances.  See <u>Gurley v.</u>
<u>King</u>, 183 S.W.3d 30, 36 (Tenn. Ct. App. 2005)("Under some
circumstances, a binding contract may be formed if the
parties agree on the material terms, even though they leave
open other provisions for later negotiation.  . . .
Provision for the execution of a more formal document such
as a purchase and sale agreement is not
conclusive.")(citations omitted); <u>APCO Amusement Co., Inc.</u>
<u>v. Wilkins Family Rests., Inc.</u>, 673 S.W.2d 523, 527-28
(Tenn. Ct. App. 1984)("[M]erely because the document signed
by the parties was expressly designated to be a 'letter of
intent' does not preclude it from construing a valid
contract.  . . .  The primary test as to the actual
character of a contract is the intention of the parties
. . .  the meeting of the minds, the intention to assume an
obligation, and the understanding are to be determined in
case of doubt not alone from the words used, but also the
situation, acts, and the conduct of the parties, and the
attendant circumstances.")(citations omitted).  Therefore,
the Court will look to the language of the letter itself
and to the conduct of the parties to determine whether the
Letter of Intent is an enforceable contract.

    The language of the one-page letter uses the term
"binding" three times to describe the effect of its

execution.  The Letter of Intent was signed and dated by
all the parties.  The essential terms of the letter
included "benefits to be shared equally," "a draw in an
amount mutually determined," and indemnification against
Vitreoretinal Foundation, PLLC.  The parties proceeded to
fulfill the obligations set forth in the Letter of Intent,
seeing clients as members of the ophthalmology practice and
signing the practice's lease agreement, the membership
consent form, and a bank loan.  For many months, Dr. Pravak
drew his compensation from the practice as the Letter of
Intent contemplated.  Finally, the Court notes that the
individual Defendants prepared and worded the Letter of
Intent.  See Boatland, Inc. v. Brunswick Corp., 558 F.2d
818 (6th Cir. 1977) and Hanover Insurance Co. v. Haney, 425
S.W.2d 590 (1968) (both applying the rule that doubt and
ambiguity in a contract must be resolved against the party
preparing it).

Reviewing all these facts and circumstances, the Court
finds that the parties did intend to be bound by their
letter, that the letter included sufficiently definite
terms, and that, therefore, the Letter of Intent
constituted a binding agreement between the parties.  See
APCO, 673 S.W.2d at 528 (holding that a letter of intent to
lease property, signed and dated by the parties, using

traditional contract language, containing mutual obligations, but omitting tax and insurance liabilities and contract duration was binding upon the parties).

Having determined that the Letter of Intent should be construed as a binding contract, the Court must now determine whether or not the Letter of Intent was subject to a condition precedent. The existence of a condition precedent depends upon the parties' intention, which courts may discern from the contractual language and the circumstances surrounding the contract's execution. Miller v. Resha, 820 S.W.2d 357, 360 (Tenn. 1991); Harlan v. Hardaway, 796 S.W.2d 953, 957-58 (Tenn. Ct. App. 1990). Generally, courts do not favor conditions precedent and will construe doubtful language to impose a duty rather than create a condition precedent. Koch v. Constr. Tech., Inc., 924 S.W.2d 68, 71 (Tenn. 1996); Harlan, 796 S.W.2d at 958; Restatement (Second) of Contracts § 227(3) (1981).

No special language is needed to create a condition precedent. The nature of the agreement and its surrounding circumstances may sufficiently manifest the parties' intention to make a contractual obligation conditional. Harlan, 796 S.W.2d at 957-58; Restatement (Second) of Contracts § 226 cmt. a. However, the presence of a condition is usually signaled by a conditional word or

phrase such as "if," "provided that," "when," "after," "as soon as," "on condition that," and "subject to." <u>Harlan</u>, 796 S.W.2d at 958; Restatement (Second) of Contracts § 226 cmt. a.

Viewing the facts of this case in the light most favorable to Plaintiff, the Letter of Intent was not subject to a condition precedent. The phrase "subject to execution of mutually acceptable, definitive written agreements" refers to the "[a]ppropriate documents [that] will be prepared providing for [Dr. Pravak's] participation, management and compensation." (<u>Id.</u>) The intent to form these additional agreements does not render the Letter of Intent unenforceable. As discussed above, the essential terms of the letter ("benefits to be shared equally," "a draw in an amount mutually determined," and indemnification against Vitreoretinal Foundation, PLLC) and the parties' subsequent conduct are sufficient to create the binding agreement intended by its signatories. Accordingly, Plaintiff's breach of contract claims are ones upon which relief can be granted, and Defendants' Motions to Dismiss Counts I, II, and VIII are DENIED.

**C. Count VII**

Tennessee law makes it "unlawful for any person, by inducement, persuasion, misrepresentation, or other means,

to induce or procure the breach [of] any lawful contract by any party thereto." Tenn. Code Ann. § 47-50-109. Count VII of the Amended Complaint alleges that Drs. Meyer and Flores induced the Eye Group to breach its contractual obligations to Dr. Pravak under the Letter of Intent in violation of this provision and Tennessee common law. (Am. Compl. ¶¶ 88-92.) Defendants move to dismiss Count VII, arguing that a party to a contract cannot be liable for inducement to breach that contract. (Defs.' Mem. (Doc. 28-2) 3.)

To recover under either the common law or a statutory action, a plaintiff must prove (1) there was a legal contract; (2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach; and (4) the defendant's actions proximately caused a breach and resulting damages. See Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 822 (Tenn. 1994); see also Buddy Lee Attractions, Inc. v. William Morris Agency, Inc., 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999). Under Tennessee law, "a party to a contract cannot be liable for tortious interference with that contract." Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn. 2006)(citing Ladd v. Roane Hosiery, Inc., 556 S.W.2d 758, 760 (Tenn. 1977)). However, an officer, director, or employee of a

corporation may be liable for wrongfully interfering with their corporation's contractual obligations, if that person stands as a third party to the contractual relationship. See Waste Conversion Sys., Inc. v. Greenstone Indus., Inc., 22 S.W.3d 779, 782 (Tenn. 2000)(citing Forrester v. Stockstill, 896 S.W.2d 328, 330-35 (Tenn. 1994)).

In this case, Defendants Drs. Meyer and Flores cannot be liable to Dr. Pravak for interference with the Eye Group's obligations under the Letter of Intent because they were also parties to that contract. The allegation that their acts were wrongful does not render their relationship to Dr. Pravak and the Eye Group analogous to those in Ladd, Forrester, Waste Conversion, and Cambio because in each of those cases the defendants were not also parties to the contracts at issue. See Ladd, 556 S.W.2d at 760; Forrester, 896 S.W.2d at 330; Waste Conversion, 22 S.W.3d at 782; Cambio, 213 S.W.3d at 789. Accordingly, the Court GRANTS Defendants' Motions to Dismiss Count VII of the Amended Complaint for failure to state a claim upon which relief can be granted.

**D. Count IX**

Defendants move to dismiss Count IX, which alleges breach of fiduciary duties, because as a matter of law they did not owe fiduciary duties to Dr. Pravak. (Def.'s Mem.

(Doc 59-2) 2.)  During the January 18, 2008, hearing on
this matter, Plaintiff conceded that Count IX should be
dismissed as to the Meyer Group, which owes no duties to
its members.

Tennessee law governing limited liability companies
provides:

> (a) FIDUCIARY DUTY OF MEMBERS OF MEMBER MANAGED
> LLC. Except as provided in the articles or
> operating agreement, every member of a member-
> managed LLC must account to the LLC for any
> benefit, and hold as trustee for it any profits
> derived by the member without the consent of the
> other members from any transaction connected with
> the formation, conduct, or liquidation of the LLC
> or from any use by the member of its property
> including, but not limited to, confidential or
> proprietary information of the LLC or other
> matters entrusted to the member as a result of
> such person's status as a member.
>
> (b) STANDARD OF CONDUCT. A member of a member-
> managed LLC shall discharge such member's duties
> as a member, including all duties as a member of
> a committee:
>
> (1) In good faith;
>
> (2) With the care an ordinarily prudent person in
> a like position would exercise under similar
> circumstances; and
>
> (3) In a manner the member reasonably believes to
> be in the best interest of the LLC.

Tenn. Code Ann. § 48-240-102 (2002).  Tennessee courts have
interpreted this statutory language to mean that members
owe fiduciary duties to a member-managed limited liability
company, like the Eye Group, but not to each other.  See

*ARC LifeMed v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 22-23 (Tenn. Ct. App. 2005) (citing *McGee v. Best*, 106 S.W.3d 48 (Tenn. Ct. App. 2002) (holding that Tennessee law "defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members")). The exception to this general rule imposes a fiduciary relationship upon a majority shareholder of an LLC in his relationship to a minority shareholder. See *ARC LifeMed*, 183 S.W.3d at 23 (citing *Anderson v. Wilder*, 2003 WL 22768666, at *6 (Tenn. Ct. App. Nov. 21, 2003)).

Like those cases applying the general rule, this case "involves uncomplicated contractual duties" arising under the Letter of Intent "and not a factual situation involving oppression by a majority shareholder of minority shareholders." Id. This case does not stem from the expulsion of one minority member through the exploitation of a majority's shareholder status, as the only case to recognize a duty between members did. See *Anderson*, 2003 WL 22768666, at *1. Accordingly, the general rule that members of a member-managed limited liability corporation do not owe one another fiduciary duties applies to this case, and the Court GRANTS Defendants' Motions to Dismiss Count IX for failure to state a claim upon which relief can be granted.

**E. Counts X & XI**

Defendants Drs. Meyer and Flores move to dismiss Plaintiff's civil RICO claims because the predicate acts alleged within them were neither directed at nor relied upon by Dr. Pravak and because the individual Defendants were not part of an enterprise as defined by RICO. (Defs.' Mem. (Doc. 20-2) at 6.) Since Defendants filed their Motion to Dismiss Plaintiff's RICO claims, the Supreme Court has rejected their reliance challenge. See Bridge Phoenix Bond & Indem. Co., 128 S.Ct. 2131, 2134 (2008)(holding that "no reliance showing is required to establish that a person has violated § 1962(c) by conducting an enterprise's affairs through a pattern of racketeering activity" based on mail and wire fraud). Accordingly, the Court will only address Defendants' assertion that Plaintiff's RICO claims fail to adequately allege the existence of an enterprise.

Plaintiff alleges violations of both 18 U.S.C. § 1962(b) and (c). To establish liability under either provision, Plaintiff must show (1) a person, (2) engaged in a pattern of racketeering, and (3) in connection with an enterprise. See Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir. 1993). RICO defines an "enterprise" as including "any individual, partnership, corporation, association, or other

legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. 1961(4).

A corporation cannot be both the "enterprise" and the "person" conducting or participating in the affairs of that enterprise.  See, e.g., Begala v. PNC Bank, 214 F.3d 776, 781 (6th Cir. 2000); Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1489 (6th Cir. 1989).  Consistent with this "non-identity" or "distinctness" requirement, a corporate entity may not be liable under RICO "for participating in the affairs of an enterprise that consists only of its own agents or members."  Begala, 214 F.3d at 781 (citing United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir. 1982)(citing United States v. Computer Sciences Corp., 689 F.2d 1181, 1190 (4th Cir. 1982); see also Whelan v. Winchester Prod. Co., 319 F.3d 225, 229 (5th Cir. 2003)("It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business.  . . .  Company officers and employees not associated other than through the activities of the company do not constitute an enterprise . . . .").  However, a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to

its different legal status . . . nothing in the statute . .
. requires more 'separateness' than that." <u>Cedric Kushner</u>
<u>Promotions, Ltd. v. King</u>, 533 U.S. 158, 163 (2001).  An
employee and a corporation are distinct "persons" for the
purposes of RICO liability, "even where the employee is the
corporation's sole owner."  <u>Id.</u>

     In this case, Plaintiff alleges that the Meyer Group
constitutes an "enterprise" for purposes of the individual
Defendants' RICO liability.  (Am. Compl. ¶ 106.1.)  The
Meyer Group is a Tennessee professional limited liability
company.  Plaintiff alleges that Drs. Meyer and Flores, in
their capacity as member of the Meyer Group, misrepresented
Dr. Pravak's membership status to him as well as to
BankTennessee, Tracey DeBacco, Dr. Matt Hughes, the
Internal Revenue Service, and the Tennessee Secretary of
State.  (Am. Compl. ¶¶ 101(a)-(f).)  Plaintiff also alleges
that the individual Defendants, again as member of the
Meyer Group, made misrepresentations regarding their client
billing, medical licensing, and patients' conditions to
their patients, the Arkansas Medical Board, and a
disability insurance company.  (Am. Compl. ¶¶ 101(g)-(o).)

     Plaintiff the Meyer Group meets RICO's "distinctness"
or "non-identity" requirement and, therefore, serves as an
"enterprise" for the purposes of Plaintiff's RICO claims

against Drs. Meyer and Flores.  However, the Meyer Group

cannot be both the "person" and the "enterprise" in any

RICO claim alleged against itself.  While Count XI

identifies only Drs. Meyer and Flores as potentially liable

pursuant to 18 U.S.C. § 1962(c), Count X identifies "one or

more of the Defendants" as allegedly liable under 18 U.S.C.

§ 1962(b).  (Am. Compl. ¶ 103.)  Accordingly, the Court

DENIES Defendants' Motions to Dismiss Plaintiff's RICO

claims as to individual Defendants Drs. Meyer and Flores,

and GRANTS the Meyer Group's Motion to Dismiss Count X.


### F. Count XIII

Defendants move to dismiss Plaintiff's claims for

declaratory judgment and injunctive relief because the

alleged unlawful conduct harmed the Eye Group, not Dr.

Pravak, and, therefore, can only be enjoined pursuant to a

derivative, rather than an individual, law suit.  (Def.'s

Mem. (Doc. 55-2) at 3-4.)  Plaintiff's Amended Complaint

asserts Count XIII in conjunction with the derivative

claims contained in Counts XXI and XXII.  Those Counts

appear to comply with Tennessee's procedural requirements

for derivative actions.  See Tenn. Code Ann. § 48-230-102.

Accordingly, Defendants' Motions to Dismiss Count XIII and

to Strike all relevant allegations are DENIED without prejudice.

## IV. Motions to Strike

Defendants move the Court to exercise its inherent power to cure abuse of process, as well as its discretion under Federal Rule of Civil Procedure 12(f) to strike from the pleadings "any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are disfavored and should be denied unless "the challenged controversy may cause some form of significant prejudice to one or more of the parties to the action."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 436 (3d ed. 2004); see also McKinnie v. Lundell Mfg. Co., 825 F. Supp. 834, 835 (W.D. Tenn. 1993).  Striking a pleading is considered a "drastic remedy to be resorted to only when required for the purposes of justice," and it "should be sparingly used by the courts."  Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953).

At this stage, while there are multiple factual allegations in dispute, the court does not find any of Plaintiff's allegations so improper as to warrant such extreme action.  The Court, therefore, declines to exercise its discretion and DENIES Defendants' Motions to Strike.

**V. Conclusion**

For the reasons already discussed, the Court GRANTS Plaintiff's Motion for Leave to File an Amended Complaint. The Court also GRANTS Defendants' Motions to Dismiss Counts VII and IX for failure to state a claim upon which relief can be granted. In addition, the Court DENIES Defendants' Motions to Dismiss Counts I, II, VIII, X, XI, and XIII and to Strike.

SO ORDERED this 25th day of July, 2008.

/s/ JON P. McCALLA
UNITED STATES DISTRICT JUDGE